# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| MICHAEL HARRIS | CIVIL ACTION NO. 17-931 |
| VERSUS | JUDGE ROBERT G. JAMES |
| GARDNER DENVER THOMAS, INC., ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

## RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 13] filed by Defendants Gardner Denver Thomas, Inc. ("Gardner Denver") and Erick Stoor. Plaintiff Michael Harris does not oppose the motion. For reasons assigned below, the motion is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

Gardner Denver hired Harris as an employee on April 26, 2010. While employed, Harris was a member of a collective bargaining unit, which operated under a collective bargaining agreement ("CBA") between Gardner Denver and Communications Workers of America ("the Union").

On July 6, 2016, Harris was accused of peeping under the men's restroom stall at a coworker. Gardner Denver investigated and verified the accusation. Having verified the allegation and having warned Harris twice before about similar conduct, Gardner Denver found just cause to, and did, discharge Harris on July 8, 2016.

Recording the findings of the investigation on a Disciplinary Action Notice form, Kayce Creighton, Human Resources Generalist, wrote: "Mr. Harris was in the restroom attempting to look under the stall at another employee. This immoral and sexual deviant behavior is unacceptable and will not be tolerated. Gardner Denver makes every effort for a safe work environment and this

behavior is a direct violation." [Doc. No. 13-4].

Under Articles 3 and 8 of the CBA, Gardner Denver may discharge an employee for "just cause." [Doc. No. 13-3, pp. 6, 9]. Article 8 provides, "The question of whether 'just cause' exists for the discipline shall be subject to the grievance and arbitration procedure provided herein." *Id.* at 9. Under Article 21, "an employee who is discharged must process his/her grievance" through the first three tiers. *Id.* at 24. Following that, a discharged employee must submit his grievance to arbitration. *Id.* at 23.

Harris processed his grievances—which he described as "false accusations of sexual harassment" and "discrimination"—through the third tier of the grievance process. [Doc. No. 13-5]. On July 14, 2016, Debra Priebe, Gardner Denver's Manager of Human Resources, denied Harris's grievance at the third tier, noting, "Termination will stand . . . ." *Id.*

There is no evidence, however, that Plaintiff asked the Union to submit his grievances to arbitration within the requisite time period. Article 22 of the CBA provides: "The Union, after properly utilizing all steps of the Grievance Procedure and desiring to submit a matter to arbitration, shall notify the Company in writing within the aforementioned thirty (30) calendar days." [Doc. No. 13-3, p. 23]. The "aforementioned thirty (30) calendar days" refers to Article 21, which provides that a tier-three decision is final unless the Union notifies "the Company in writing within thirty (30) days that it desires to submit the matter to arbitration." *Id.* at 24. As Harris did not ask the Union to submit his grievances to arbitration, the grievances were deemed waived under the terms of the CBA. *Id.* at 23.

On June 30, 2017, Harris filed suit in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, and alleged, under state law, that Defendants wrongfully terminated him,

2

defamed him, and subjected him to emotional distress. [Doc. No. 1-2]. On July 20, 2017, Defendants removed the proceeding to this Court, grounding federal question jurisdiction on the contention that Harris's claims are preempted under the Labor Management Relations Act ("LMRA"). [Doc. No. 1].

On September 13, 2017, Defendants moved for summary judgment, arguing that Harris's claims are preempted under Section 301 of the LMRA, that Harris "cannot bring tort claims under Section 301[,]" that Harris failed to exhaust all remedies under the CBA before filing suit, and that Harris's claims are time barred. Harris did not respond to Defendants' motion or otherwise controvert Defendants' properly supported statement of material facts [Doc. No. 13-1]. Consequently, all material facts that Defendants proffer are deemed admitted. LR 56.2.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). Even if the motion is unopposed, the Court may not grant a motion for summary judgment unless the moving party meets its initial burden. *Hetzel v. Bethlehem*

*Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

**B.      Harris's Claims are Preempted.**

Defendants maintain that 29 U.S.C. § 185(a) ("Section 301") preempts Harris's state law claims. [Doc. No. 14, p. 10]. Addressing that Section, the Fifth Circuit thoroughly explained:

> Section 301 of the LMRA does not specifically address preemption; rather, it provides federal jurisdiction for suits involving CBA disputes.[1] The Supreme Court, however, has held that "§ 301 expresses a federal policy that the substantive law to apply in § 301 cases is federal law, which the courts must fashion from the policy of our national labor laws," *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (citation and internal quotation marks omitted), and that the "dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the areas covered by the statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." *Id.* (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). As noted by the *Allis–Chalmers* Court, "[a] state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Id.* at 210.
>
> The *Allis–Chalmers* Court, however, went further, stating "[i]f the policies that animate § 301 are to be given their proper range, . . . the preemptive effect of § 301 must extend beyond suits alleging contract violations." *Id.* In other words:
>
>> "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit

---

[1] "Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C.A. § 185(a).

4

alleging liability in tort."

*Id.* at 211, 105 S.Ct. 1904. Noting that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301," *id.*, the Supreme Court defined the contours of § 301 preemption, holding that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." *Id.* at 213, 105 S.Ct. 1904. The Supreme Court then directed courts to inquire as to "whether evaluation of [a] tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.*

We have elaborated on these general principles in the context of a negligence suit by an employee against an employer, holding that "such preemption occurs when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation" of a CBA. *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 97 (5th Cir.1996) (per curiam). We also held that "[t]o determine if adjudicating the claim requires interpreting the terms of a CBA, a court is required first to analyze the elements of the tort at issue." *Id.*

*Espinoza v. Cargill Meat Sols. Corp.*, 622 F.3d 432, 442-43 (5th Cir. 2010).

Here, Harris alleges state law claims of wrongful discharge, defamation, and intentional infliction of emotional distress. [Doc. No. 1-2]. Harris's wrongful discharge claim is, without doubt, inextricably intertwined with consideration of the terms of the CBA. Harris does not allege that Defendants discharged him because of discriminatory or retaliatory reasons.[2] Rather, after reciting Defendants' alleged just cause, he simply alleges that Defendants terminated him "wrongfully," which is tantamount to alleging that Defendants lacked just cause to terminate him. Adjudicating this claim will therefore require the Court to examine whether, under Articles 3 and

---

[2] In Louisiana, "A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing." LA. CIV. CODE art. 2747. "As long as the termination does not violate any statutory or constitutional provisions," the employer is without liability. *Fletcher v. Wendelta, Inc.*, 43,866 (La. App. 2 Cir. 1/14/09), 999 So. 2d 1223, 1230. "The at-will doctrine provides a shield to employers so significant that only a few instances provide exception to the protection." *Id.*

8 of the CBA, Gardner Denver had "just cause" to discharge Harris. [*See* Doc. No. 13-3, pp. 6,9]. This claim is preempted.[3]

Harris's defamation and emotional distress claims are likewise preempted. Notably, Harris grounds his claims in the exact language that the human resources generalist used to describe the findings of her investigation: "Petitioner was in the restroom attempting to look under the stall at another employee. This immoral and sexual deviant behavior is unacceptable and will not be tolerated. Gardner Denver makes every effort for a safe work environment and this behavior is a direct violation." [*C.f.* Doc. Nos. 1-2, p. 5; 13-4]. In short, Harris alleges that Gardner Denver's just cause for termination amounts to defamation and intentional infliction of emotional distress. To the extent Harris claims that Gardner Denver's stated reasons for discharge do not amount to "good cause," the Court must necessarily consider and interpret the CBA.

Adjudicating the defamation and emotional distress claims will also require the Court to interpret the grievance, discharge, and management provisions of the CBA. To prevail on his defamation claim Harris must demonstrate: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 674 (La. 2006). To prevail on his intentional infliction of emotional distress claim, Harris must demonstrate: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict

---

[3] *See Jones v. Turner*, 2013 WL 6000594, at *3 (E.D. La. Nov. 12, 2013) (holding that the plaintiff's wrongful discharge claim was preempted because, "in order to determine whether plaintiff was wrongfully discharged, the Court would have to interpret the CBA because that document sets forth the method of assessing whether a discharge was proper.").

severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

To adjudicate these claims, considering that Harris's grounds for the claims are the reasons Gardner Denver cited in its answer to Harris's third-tier grievance as just cause for discharging him,[4] the Court would have to interpret both the grievance procedure and the discharge provisions in the CBA.[5] The Court would also have to interpret the "Management Rights" portion of the CBA, which provides that the management has the right to "relieve employees from duties" and to "discharge employees for just cause."[6]

---

[4] Harris does not allege that Defendants defamed or inflicted emotional distress in any way other than discharging him and stating the reasons for discharge. *See Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 280 (5th Cir. 1994) (holding that a claim of intentional infliction of emotional distress was preempted because the plaintiff did not "allege that any action on the part of the defendants other than his reassignment to a maintenance position [] caused him mental distress.").

[5] *See Strachan v. Union Oil Co.*, 768 F.2d 703, 706 (5th Cir. 1985) (considering the plaintiffs' assertion that the employer's suspension and investigation procedure had defamed them by virtue of other employees' learning of the investigations and reasoning, "To hold the company guilty of defamation for making such inquiries, even though they become known in the plant, would simply mean that the company could never undertake to investigate a possible disciplinary situation in routine and proper ways . . . ."); *Bagby v. Gen. Motors Corp.*, 976 F.2d 919, 922 (5th Cir. 1992) (holding that claims of intentional infliction of emotional distress and defamation based on acts "unquestionably taken in accordance with provisions of the CBA" were preempted under the LMRA); *Stafford v. True Temper Sports*, 123 F.3d 291, 296 (5th Cir. 1997) (noting that state law claims of intentional infliction of emotional distress and defamation are preempted if the claims relate to a dispute over whether the plaintiff's dismissal was appropriate or whether the employer's actions in investigating and sanctioning alleged misconduct were reasonable); *Davis v. Kroger Texas LP*, 429 F. App'x 376 (5th Cir. 2011) (holding that claims of fraud and defamation, stemming from an allegation that company records did not accurately reflect an employee's seniority dates, were preempted because the complained-of events were covered by a collective bargaining agreement that addressed seniority and termination).

[6] *See Baker*, 34 F.3d at 280 (finding a claim of intentional infliction of emotional distress preempted because the grounds for the claim were reassignment to another position and the CBA granted management the right to reassign employees).

As there are no genuine disputes of material fact, Harris's state law claims are preempted in favor of applying uniform principles of federal labor law. As a result, the Court must either treat Harris's claims as Section 301 claims or dismiss them as preempted. *Allis-Chalmers Corp.,* 471 U.S. at 220.

C. **Harris Failed to Exhaust the Grievance Procedures in the CBA.**

Treating Harris's claims as Section 301 claims, they must be dismissed because he failed to exhaust the grievance procedures in the CBA. "[F]ederal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965); *see Parham v. Carrier Corp.*, 9 F.3d 383, 390 (5th Cir. 1993) ("In the section 301 context, federal law ordinarily requires a plaintiff to exhaust grievance procedures established in a collective bargaining agreement before filing a claim in court."); *Strachan*, 768 F.2d at 704 ("The law is completely clear that employees may not resort to state tort or contract claims in substitution for their rights under the grievance procedure in a collective bargaining agreement.").[7]

Here, it is undisputed that the CBA contains a four-tiered grievance and arbitration process[8]

---

[7] The Fifth Circuit recognizes the following three exceptions to the exhaustion requirement: "(1) the union wrongfully refuses to process the employee's grievance, thus violating its duty of fair representation; (2) the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract; or (3) exhaustion of contractual remedies would be futile because the aggrieved employee would have to submit his claim to a group which is in large part chosen by the (employer and union) against whom (his) real complaint is made." *Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978) (internal quotation marks, quoted sources, and citations removed). No exception is in dispute here.

[8] The procedure is the exclusive and final remedy for aggrieved employees: "All decisions . . . on grievances shall be final and binding . . . ." [Doc. No. 13-3, p. 24]; *see Daigle v.*

[Doc. No. 13-3, pp. 23-24], and that Harris failed to ask the Union to submit his claim to arbitration [Doc. Nos. 13-1, p. 3; 13-2, p. 3].[9] Moreover, it is undisputed that the time for submitting his claims to arbitration expired: the personnel manager rendered a tier-three decision on July 14, 2016, Harris had thirty days to inform Gardner Denver that he desired to arbitrate his grievances,[10] and Harris never requested arbitration.

Because the time for submitting his grievances to arbitration has passed, Harris cannot exhaust the grievance and arbitration procedure, and he cannot re-file the instant claims. Considering Defendants' properly supported motion, as well as Harris's lack of opposition, the Court finds that there is no genuine dispute of material fact and that Defendants are entitled to judgment as a matter of law.[11] *See Bagby*, 976 F.2d at 922 (holding that state law claims against employer for defamation and intentional infliction of emotional distress were preempted and that employee could not pursue his claims because he had failed to use the grievance procedure prescribed in the

---

*Gulf State Utilities Co., Local Union No. 2286*, 794 F.2d 974, 977 (5th Cir. 1986) ("If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure . . . .").

[9] Harris does not allege that the Union breached its duty of fair representation. In other words, he does not contend that he requested the Union to submit his grievances to arbitration and the Union refused or failed to do so.

[10] To reiterate, Article 22 of the CBA provides: "The Union, after properly utilizing all steps of the Grievance Procedure and desiring to submit a matter to arbitration, shall notify the Company in writing within the aforementioned thirty (30) calendar days." [Doc. No. 13-3, p. 23]. The "aforementioned thirty (30) calendar days" refers to Article 21, which provides that a tier-three decision is final unless the Union notifies "the Company in writing within thirty (30) days that it desires to submit the matter to arbitration." *Id.* at 24.

[11] The Court need not reach Defendants' arguments that Harris "cannot bring torts claims under Section 301" and "cannot timely assert a Section 301 claim." [*See* Doc. No. 13, p. 1].

collective bargaining agreement).

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED, and Harris's claims are DISMISSED WITH PREJUDICE.[12]

MONROE, LOUISIANA, this 16th day of October, 2017.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[12] *See Baker*, 34 F.3d at 285 (dismissing a plaintiff's claims with prejudice because, in part, the plaintiff failed to timely exhaust his available grievance procedures).